UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SAN JOAQUIN COUNTY, SHERIFF STEVE MOORE, and DANNY SWANSON,<br><br>　　　　Defendants. | No. 2:18-cv-667-TLN-AC<br><br>**ORDER GRANTING DEFENDANT DANNY SWANSON'S MOTION TO DISMISS** |

　　　This matter is before the Court pursuant to Defendant Danny Swanson's ("Swanson") Motion to Dismiss Plaintiff's Fourth and Seventh Causes of Action of Plaintiff's Complaint. (ECF No. 10.) Plaintiff Jane Doe ("Plaintiff") filed an opposition, (ECF No. 13), and Swanson filed a reply, (ECF No. 15). For the reasons set forth below, the Court hereby GRANTS Swanson's Motion to Dismiss Plaintiff's Fourth and Seventh Causes of Action. (ECF No. 10.)

///
///
///
///
///
///

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a female inmate at San Joaquin County Jail. (ECF No. 1 ¶ 10–11.) Defendant Swanson is a sheriff's deputy for San Joaquin County. (ECF No. 1 ¶ 4.) On March 27, 2018, Plaintiff filed a complaint against Swanson, San Joaquin County, and Sheriff Steve Moore for various causes of action resulting from the alleged sexual battery, sexual harassment, and sexual discrimination of Plaintiff. (ECF No 1 ¶ 9.) Specifically, Plaintiff alleges the following causes of action: (1) Violation of Plaintiff's Eighth Amendment Rights; (2) Violation of Plaintiff's Fourteenth Amendment Due Process Rights; (3) Sexual Battery; (4) Intentional Infliction of Emotional Distress; (5) Negligence; (6) Bane Act Violation; (7) Sexual Harassment; (8) Sexual Discrimination; and (9) Negligent Hiring, Retention, and Supervision. (ECF No. 1.) Swanson now moves to dismiss Plaintiff's fourth and seventh causes of action against him. (ECF No. 10.)

Plaintiff's complaint alleges Swanson engaged in sexual battery, sexual harassment, and sexual discrimination against her in five separate incidents occurring between September 2017 and November 2017. (ECF No. 1 ¶ 9.) The Court will discuss each incident in turn.

### A. The First Incident

Swanson was regularly assigned to transport Plaintiff between San Joaquin County Jail and a local hospital for medical examinations. (ECF No. 1 ¶ 10.) During one of these hospital visits, Plaintiff was placed in an examination room and informed by a nurse to get undressed from the waist down and wait for a doctor for her pelvic examination. (ECF No. 1 ¶ 11.) Plaintiff alleges that while the doctor was performing the pelvic examination, Swanson intentionally opened a portion of the partition curtain and viewed the partially nude Plaintiff undergoing her pelvic examination. (ECF No. 1 ¶ 12.) Plaintiff alleges once the examination was completed, Swanson entered the examination room, "positioned himself directly in front of the sitting Plaintiff, with his crotch within two inches of [her] face, grabbed her shackled hands and forced her hands to grope and fondle his penis through his pants for an extended period of time." (ECF No. 1 ¶ 13.) Plaintiff claims this conduct ceased when a nurse entered the examination room. (ECF No. 1 ¶ 13.)

///

B.      The Second Incident

Next, Plaintiff alleges that on a subsequent trip to a local hospital, Swanson took her to a private room and removed her handcuffs. (ECF No. 1 ¶ 14.) Plaintiff alleges Swanson then told her she was free to get water. (ECF No. 1 ¶ 14.) While she was getting water, Plaintiff claims Swanson "walked up closely behind [her] and started gyrating and rubbing his crotch area" on Plaintiff's buttocks for an extended period of time. (ECF No. 1 ¶ 14.)

C.      The Third Incident

On the same day the second incident occurred, Plaintiff alleges Swanson was transporting Plaintiff back to San Joaquin County Jail when he pulled over in a desolate secluded area and parked the transport vehicle. (ECF No. 1 ¶ 15.) Once parked, Plaintiff alleges Swanson exited the vehicle, walked to the back of the vehicle where Plaintiff was seated, opened the door, and started fondling Plaintiff while she was shackled. (ECF No. 1 ¶ 16.) Plaintiff alleges she "screamed out no" when Swanson "grabbed her and kissed her full on the lips." (ECF No. 1 ¶ 16.) Plaintiff alleges while Swanson was forcing himself on her, his supervisors radioed him inquiring about his whereabouts. (ECF No. 1 ¶ 17.) According to Plaintiff, Swanson then immediately stopped his conduct and proceeded back to the jail. (ECF No. 1 ¶ 17.) Plaintiff claims she told her friends about the incident once she returned to the jail and contemplated telling the authorities, but decided not to say anything out of fear of retaliation from the Defendant and other deputies. (ECF No. 1 ¶ 18.)

D.      The Fourth Incident

Plaintiff alleges the fourth incident occurred when Plaintiff was picked up from San Joaquin County Jail by several sheriff deputies to be transported to a local hospital for further medical examinations. (ECF No. 1 ¶ 19.) After Plaintiff finished one of these examinations, Defendant allegedly entered the waiting room where Plaintiff was waiting to be driven back to the jail. (ECF No. 1 ¶ 19.) Plaintiff alleges Defendant told her that he had been monitoring her examination through the surveillance cameras at the hospital. (ECF No. 1 ¶ 19.) Plaintiff claims Defendant then ordered her to come with him so he could transport her back to jail. (ECF No. 1 ¶ 20.)

### E. The Fifth Incident

The final incident occurred on the drive back from the hospital to the San Joaquin County Jail following the fourth incident. (ECF No. 1 ¶ 20.) Plaintiff claims that while Swanson was transporting her, he pulled over to a secluded area and parked the vehicle. (ECF No. 1 ¶ 20.) Plaintiff alleges Swanson pulled out his cell phone and encouraged Plaintiff to look at photographs of his children on his phone. (ECF No. 1 ¶ 21.) As Plaintiff was shackled and looking through these pictures, she claims Swanson began showing her photographs of his body parts, such as his penis and buttocks. (ECF No. 1 ¶ 22.) Swanson allegedly forced Plaintiff to look at the nude photographs of himself for an extended period of time while he stared at her and told her "again and again how attractive she was." (ECF No. 1 ¶ 23.) Plaintiff alleges Swanson then received a radio call inquiring about Plaintiff's whereabouts, at which time he started the car and headed back to the jail. (ECF No. 1 ¶ 24.) Upon returning to the jail, Plaintiff informed her friends of these events and decided to tell the authorities of the sexual abuse that she had endured for months. (ECF No. 1 ¶ 25.)

## II. STANDARD OF LAW

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege

"'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant–unlawfully–harmed–me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). Only where a plaintiff has failed to "nudge[] [his or her] claims . . . across the line from conceivable to plausible," is the complaint properly dismissed. *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context–specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

If a complaint fails to state a plausible claim, "[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in

5

denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint." *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

**III. ANALYSIS**

Swanson moves to dismiss Plaintiff's Fourth and Seventh Causes of Action for failure to state a claim under Rule 12(b)(6).

    A.    <u>Fourth Cause of Action: Intentional Infliction of Emotional Distress</u>

"To state a claim for intentional infliction of emotional distress, a plaintiff must plead: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) that the plaintiff suffered severe or extreme emotional distress; and (3) that the plaintiff's injuries were actually or proximately caused by the defendant's outrageous conduct." *San Joaquin Deputy Sheriffs' Ass'n v. Cty. of San Joaquin*, 898 F. Supp. 2d 1177, 1192 (E.D. Cal. 2012) (citing *Berkley v. Dowds*, 152 Cal. App. 5th 518, 533 (2007)). Swanson argues Plaintiff fails to state a claim for intentional infliction of emotional distress because Plaintiff has not pled facts demonstrating she suffered severe and emotional distress. (ECF No. 10 at 6–7.)

"California courts have set a high bar for emotional distress claims . . . ." *Nelson v. City of Sacramento*, 926 F. Supp. 2d 1159, 1172 (E.D. Cal. 2013). A plaintiff must plead the severe emotional distress she suffered rises to a level "of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." *Girara v. Ball*, 125 Cal. App. 3d 772, 788 (1981) (quoting *Fletcher v. W. Nat'l Life Ins. Co.*, 10 Cal. App. 3d 376, 397 (1970)). To survive a motion to dismiss, a plaintiff must allege that the emotional distress was "*severe* and not trivial or transient." *Wong v. Jing*, 189 Cal. App. 4th 1354, 1376–77 (2010) (finding plaintiff's claims of sleep loss, upset stomach, and general anxiety did not comprise "emotional distress of such substantial quality or enduring quality that no reasonable [person] in society should be expected to endure it"). General allegations of emotional distress are

insufficient to overcome a motion to dismiss. *See Nelson*, 926 F. Supp. 2d at 1172 (finding conclusory statements of "pain, grief, shame, humiliation, embarrassment, anger, disappointment, depression, sleeplessness, anxiety, disappointment, damage to reputation, and worry" lacking in specificity to support surviving a motion to dismiss). Rather, a plaintiff must "indicate the nature or extent of any mental distress suffered as a result of the alleged outrageous conduct." *Hamilton v. Prudential Financial*, No. 2:07-CV-00944-MCE-DAD, 2007 WL 2827792, at *4 (E.D. Cal. Sept. 27, 2007).

Here, Plaintiff concedes she has pled no specific facts describing any severe emotional distress she suffered. (ECF No. 13 at 3.) However, Plaintiff maintains that her allegations detail the horrendous conduct of Swanson and thus give rise to an inference that she suffered highly unpleasant mental reactions such as fright, grief, shame, humiliation, embarrassment, anger, and worry. (ECF No. 13 at 3–4.) Plaintiff provides no authority standing for the proposition that severe emotional distress may be inferred merely from the Defendant's outrageous conduct, and the Court declines to make such an inference. The law is clear that Plaintiff must plead facts demonstrating the severity and extent of her emotional distress. Therefore, because Plaintiff has failed to allege the nature and extent of her emotional distress, she has failed to state a claim for intentional infliction of emotional distress. Accordingly, the Court dismisses Plaintiff's Fourth Cause of Action for intentional infliction of emotional distress with leave to amend.

      B.   <u>Seventh Cause of Action: Sexual Harassment Under California Civil Code § 51.9</u>

California Civil Code § 51.9(a) provides that a person is liable in a cause of action for sexual harassment when a plaintiff proves all of the following elements: (1) there is a business, service, or professional relationship between the plaintiff and defendant; (2) the defendant has made sexual advances, solicitations, requests, or demands, or engaged in other conduct of a sexual nature or hostile nature based on gender, that were unwelcome and pervasive or severe; and (3) the plaintiff has suffered or will suffer economic loss or disadvantage or personal injury, including, but not limited to, emotional distress or the violation of a statutory or constitutional right. Cal. Civ. Code § 51.9(a). Swanson argues that Plaintiff fails to state a claim under § 51.9

7

because she has not established a qualifying relationship. (ECF No. 10 at 7–8.) Plaintiff responds that § 51.9 should apply to jailor-inmate relationships because "by their nature, county jails are charged with providing inmates services while the inmates are in their custody." (ECF No. 13 at 5.) Specifically, Plaintiff contends that Swanson was providing the service of transporting Plaintiff to the hospital when the alleged incidents occurred. (ECF No. 13 at 6.)

"[T]he Legislature enacted Civil Code section 51.9 to address 'relationships between providers of professional services and their clients.'" *Hughes v. Pair*, 46 Cal. 4th 1035, 1044 (2009). Section 51.9 enumerates numerous qualifying relationships, including but not limited to physicians, psychotherapists, dentists, attorneys, accountants, real estate agents, executors, trustees, landlords, teachers, elected officials, lobbyists, directors, and producers. Cal. Civ. Code § 51.9. Section 51.9 also includes a catchall provision stating that it applies to any "relationship that is substantially similar to any of the above." *Id.*

Plaintiff provides no authority supporting her proposition that a jailor-inmate relationship is substantially similar to any of the professional relationships enumerated in § 51.9. Jailor-inmate relationships are inherently distinct from the professional, business, or service relationships contemplated by § 51.9 because such relationships occur outside of the professional business setting. Jailor-inmate relationships are not professional relationships involving a client voluntarily seeking a paid professional's health, legal, or other business services, but rather are custodial relationships in which an inmate is subjected to the relationship as a result of the inmate's involuntary incarceration. *See Solesbee v. Cty. of Inyo*, No. 1:13-CV-1548 AWI JLT, 2014 WL 3890680, at *9 (E.D. Cal. Aug. 7, 2014) (holding § 51.9 did not apply to a relationship between a participant in a county jail work release program and the county). Thus, even if Swanson technically provided Plaintiff transportation services, the services do not arise out of the kind of professional relationship contemplated by § 51.9. Accordingly, Plaintiff is not in a business, service, or professional relationship with Swanson, and the Court dismisses Plaintiff's Seventh Cause of Action for sexual harassment with prejudice.

IV. **CONCLUSION**

For the foregoing reasons, the Court hereby GRANTS Defendant Danny Swanson's

Motion to Dismiss Plaintiff's Fourth and Seventh Causes of Action. (ECF No. 10.)

Accordingly, the Court hereby:

1. DISMISSES Plaintiff's Fourth Cause of Action against Defendant Swanson with leave to amend.
2. DISMISSES Plaintiff's Seventh Cause of Action against Defendant Swanson with prejudice.

Plaintiff is afforded thirty (30) days from the date of this Order to file an amended complaint.

IT IS SO ORDERED. Dated: May 10, 2019

_____
Troy L. Nunley
United States District Judge