UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE,<br><br>Plaintiff,<br><br>v.<br><br>SAN JOAQUIN COUNTY, SHERIFF STEVE MOORE, AND DANNY SWANSON,<br><br>Defendants. | No. 2:18-cv-00667-TLN-AC<br><br>**MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS COUNTY OF SAN JOAQUIN AND SHERIFF STEVE MOORE'S MOTION TO DISMISS** |

This matter is before the Court pursuant to Defendants County of San Joaquin ("County") and Sheriff Steve Moore's ("Moore") (collectively, "Defendants") Motion to Dismiss Portions of Plaintiff's Complaint ("Complaint"). (ECF No. 8.) Plaintiff Jane Doe ("Plaintiff") filed an opposition (ECF No. 14) and Defendants filed a reply (ECF No. 16). For the reasons set forth below, the Court hereby GRANTS in part and DENIED in part Defendants San Joaquin County and Sheriff Steve Moore's Motion to Dismiss. (ECF No. 8.)

///
///
///
///
///

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a female inmate at San Joaquin County Jail. (ECF No. 1 ¶ 10–11.) On March 27, 2018, Plaintiff filed a complaint against Danny Swanson ("Swanson"), the County, and Moore for various causes of action resulting from the alleged sexual battery, sexual harassment, and sexual discrimination of Plaintiff. (ECF No. 1 ¶ 9.) Specifically, Plaintiff alleges the following causes of action: (1) Violation of Plaintiff's Eighth Amendment Rights; (2) Violation of Plaintiff's Fourteenth Amendment Due Process Rights; (3) Sexual Battery; (4) Intentional Infliction of Emotional Distress; (5) Negligence; (6) Bane Act Violation; (7) Sexual Harassment; (8) Sexual Discrimination; and (9) Negligent Hiring, Retention, and Supervision. (ECF No. 1.) Defendants now move to dismiss Plaintiff's First, Second, Fifth, Seventh, Eight, and Ninth Causes of Action against them. (ECF No. 8.)

Plaintiff's Complaint alleges Swanson, a sheriff's deputy for the County, engaged in sexual battery, sexual harassment, and sexual discrimination against her in five separate incidents occurring between September 2017 and November 2017. (ECF No. 1 ¶¶ 4, 9.) The Court will discuss each incident in turn.

### A. The First Incident

Swanson was regularly assigned to transport Plaintiff between San Joaquin County Jail and a local hospital for medical examinations. (ECF No. 1 ¶ 10.) During one of these hospital visits, Plaintiff was placed in an examination room where a nurse directed her to get undressed from the waist down and wait for a doctor for her pelvic examination. (ECF No. 1 ¶ 11.) Plaintiff alleges that while the doctor was performing the pelvic examination, Swanson intentionally opened a portion of the partition curtain and viewed the partially nude Plaintiff undergoing her pelvic examination. (ECF No. 1 ¶ 12.) Plaintiff alleges once the examination was completed, Swanson entered the examination room, "positioned himself directly in front of the sitting Plaintiff, with his crotch within two inches of [her] face, grabbed her shackled hands and forced her hands to grope and fondle his penis through his pants for an extended period of time." (ECF No. 1 ¶ 13.) Plaintiff claims this conduct ceased when a nurse entered the examination room. (ECF No. 1 ¶ 13.)

2

### B. The Second Incident

Next, Plaintiff alleges that on a subsequent trip to a local hospital, Swanson took her to a private room and removed her handcuffs. (ECF No. 1 ¶ 14.) Plaintiff alleges Swanson then told her she was free to get water. (ECF No. 1 ¶ 14.) While she was getting water, Plaintiff claims Swanson "walked up closely behind [her] and started gyrating and rubbing his crotch area" on Plaintiff's buttocks for an extended period of time. (ECF No. 1 ¶ 14.)

### C. The Third Incident

On the same day the second incident occurred, Plaintiff alleges Swanson was transporting Plaintiff back to San Joaquin County Jail when he pulled over in a desolate secluded area and parked the transport vehicle. (ECF No. 1 ¶ 15.) Once parked, Plaintiff alleges Swanson exited the vehicle, walked to the back of the vehicle where Plaintiff was seated, opened the door, and started fondling Plaintiff while she was shackled. (ECF No. 1 ¶ 16.) Plaintiff alleges she "screamed out no" when Swanson "grabbed her and kissed her full on the lips." (ECF No. 1 ¶ 16.) Plaintiff alleges while Swanson was forcing himself on her, his supervisors radioed him inquiring about his whereabouts. (ECF No. 1 ¶ 17.) According to Plaintiff, Swanson then immediately stopped his conduct and proceeded back to the jail. (ECF No. 1 ¶ 17.) Plaintiff claims she told her friends about the incident once she returned to the jail and contemplated telling the authorities, but decided not to say anything out of fear of retaliation from the Defendant and other deputies. (ECF No. 1 ¶ 18.)

### D. The Fourth Incident

Plaintiff alleges the fourth incident occurred when Plaintiff was picked up from San Joaquin County Jail by several sheriff deputies to be transported to a local hospital for further medical examinations. (ECF No. 1 ¶ 19.) After Plaintiff finished one of these examinations, Defendant allegedly entered the waiting room where Plaintiff was waiting to be driven back to the jail. (ECF No. 1 ¶ 19.) Plaintiff alleges Defendant told her that he had been monitoring her examination through the surveillance cameras at the hospital. (ECF No. 1 ¶ 19.) Plaintiff claims Defendant then ordered her to come with him so he could transport her back to jail. (ECF No. 1 ¶ 20.)

### E. The Fifth Incident

The final incident occurred on the drive back from the hospital to the San Joaquin Jail following the fourth incident. (ECF No. 1 ¶ 20.) Plaintiff claims that while Swanson was transporting her, he pulled over to a secluded area and parked the vehicle. (ECF No. 1 ¶ 20.) Plaintiff alleges Swanson pulled out his cell phone and encouraged Plaintiff to look at photographs of his children on his phone. (ECF No. 1 ¶ 21.) As Plaintiff was shackled and looking through these pictures, she claims Swanson began showing her photographs of his body parts, such as his penis and buttocks. (ECF No. 1 ¶ 22.) Swanson allegedly forced Plaintiff to look at the nude photographs of himself for an extended period of time while he stared at her and told her "again and again how attractive she was." (ECF No. 1 ¶ 23.) Plaintiff alleges Swanson then received a radio call inquiring about Plaintiff's whereabouts, at which time he started the car and headed back to the jail. (ECF No. 1 ¶ 24.) Upon returning to the jail, Plaintiff informed her friends of these events and decided to tell the authorities of the sexual abuse that she had endured for months. (ECF No. 1 ¶ 25.)

## II. STANDARD OF LAW

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege

"'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant–unlawfully–harmed–me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). Only where a plaintiff has failed to "nudge[] [his or her] claims . . . across the line from conceivable to plausible," is the complaint properly dismissed. *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context–specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

If a complaint fails to state a plausible claim, "[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in

denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint." *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

### III. ANALYSIS

First, Defendants move to dismiss Plaintiff's First and Second Causes of Action against the County for failure to allege an unconstitutional policy or practice. (ECF No. 8 at 15–18.) Second, Defendants move to dismiss Plaintiff's First, Second, and Ninth Causes of Action against Moore in both his individual and official capacities. (ECF No. 8 at 18–20.) Third, Defendants move to dismiss Plaintiff's Fifth, Seventh, Eighth, and Ninth Causes of Action for failure to state a claim under Rule 12(b)(6). (ECF No. 8 at 20–23.)

#### A. First and Second Causes of Action Against Defendant San Joaquin County

Defendants move to dismiss Plaintiff's First and Second Causes of Action against the County for failure to allege an unconstitutional policy or practice. (ECF No. 8 at 15–18.) Plaintiff voluntarily dismisses her First and Second Causes of Action against the County with a request for leave to amend. (ECF No. 14 at 6.) Defendants argue that Plaintiff should not be given leave to amend her complaint because her opposition does not explain how she would amend her complaint. (ECF No. 16 at 3.)

Leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). "[T]his policy is to be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001). The Court should only deny a request for leave to amend if allowing amendment would unduly prejudice the opposing party, cause undue delay, be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008); *see also Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015) (holding a district court should grant leave to amend when additional factual allegations could cure a complaint's defects). The Court finds that amendment may not be futile, nor would it unduly prejudice Defendants or cause undue delay at this early stage in litigation. Therefore, the Court

dismisses Plaintiff's First and Second Causes of Action against the County with leave to amend.

          B.      <u>First, Second, and Ninth Causes of Action Against Defendant Moore</u>

Plaintiff does not allege whether she is suing Moore in his official or individual capacity. Therefore, the Court will address Defendants arguments regarding both Moore's official and individual capacities.

                                       *i.*      *Official Capacity*

Defendants move to dismiss Plaintiff's First, Second, and Ninth Causes of Action against Moore in his official capacity because Plaintiff's claims against him in his official capacity as Sheriff of San Joaquin County are duplicative of Plaintiff's claims against the County. (ECF No. 8 at 19–20.) As stated above, Plaintiff voluntarily dismisses her First and Second Causes of Action against Moore with a request for leave to amend, but does not explicitly address the argument that claims against Moore in his official capacity are duplicative of the same claims against the County. (ECF No. 14 at 6.)

A claim against a municipal officer in his official capacity is duplicative of a claim against the municipality. *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985). "For this reason, when both an officer and the local government entity are named in a lawsuit and the officer is named in official capacity only, the officer is a redundant defendant and may be dismissed." *Luke v. Abbott*, 954 F. Supp. 202, 203 (C.D. Cal. 1997). Accordingly, the Court finds the claims duplicative. Since any amendment would be futile, the Court dismisses Plaintiff's First, Second, and Ninth Causes of Action against Moore in his official capacity without leave to amend.

                                       *ii.*      *Individual Capacity*

Defendants move to dismiss Plaintiff's First, Second, and Ninth Causes of Action against Moore in his individual capacity because Plaintiff fails to allege that Moore "personally participated in the underlying incidents, or was even present for any of the alleged actions." (ECF No. 8 at 18–19.) Plaintiff voluntarily dismisses her First and Second Causes of Action against Moore with a request for leave to amend and does not respond to Defendants' arguments regarding dismissal of Plaintiff's Ninth Cause of Action against Moore in his individual capacity. (ECF No. 14 at 6.) Defendants argue that Plaintiff should not be given leave to amend her

complaint because her opposition does not explain how she would amend her complaint. (ECF No. 16 at 3.)

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Here, Plaintiff has failed to allege any conduct on behalf of Moore that violated Plaintiff's constitutional rights, and has offered no argument in her opposition that Moore violated Plaintiff's constitutional rights. However, the Court finds that amendment would not be futile, nor would it unduly prejudice Defendants or cause undue delay at this early stage in litigation. Therefore, the Court dismisses Plaintiff's First and Second Causes of Action against Moore in his individual capacity with leave to amend.

With regard to Plaintiff's Ninth Cause of Action, however, the Court finds Plaintiff has adequately plead facts supporting this cause of action against Moore in his individual capacity. Indeed, Plaintiff has alleged Moore personally hired Defendant Swanson, that he personally supervised him, and that he knew or should have known Swanson was unfit for the position for which he was hired. (ECF No. 1 at 24-25.)

Moreover, to the extent Defendants argue that Plaintiff's claim fails because she has failed to allege facts supporting a special relationship between Plaintiff and Moore, Defendants' argument also fails. Plaintiff argues that such a special relationship does in fact exist here, and claims this special relationship required Defendants to protect Plaintiff. (ECF No. 14 at 4.) "A defendant may owe an affirmative duty to protect another from the conduct of third parties if he or she has a 'special relationship' with the other person." *Giraldo v. Dep't of Corr. & Rehab.*, 168 Cal. App. 4th 231, 245 (2008). The California Supreme Court has found that such a special relationship exists "in cases involving the relationship between business proprietors such as shopping centers, restaurants, and bars, and their tenants, patrons, or invitees." *Delgado v. Trax Bar & Grill*, 36 Cal. 4th 224, 235 (2005). Moreover, California courts have recognized that "the relationship of jailer and prisoner imposes a duty of care, [and] recognition of such a duty finds support in numerous, if not all, pertinent authorities." *Giraldo*, 168 Cal. App. 4th at 246, 252–53 (holding that "there is a special relationship between jailer and prisoner which imposes a duty of

care on the jailer to the prisoner"). Courts within the district have determined that "there is a well-established special relationship between jailers and prisoners." *Lum v. Cty. of San Joaquin*, 756 F. Supp. 2d 1243, 1254 (E.D. Cal. 2010).

Defendants cite to *Fuentes v. City of San Diego*, No. 316CV02871BENJMA, 2017 WL 2670976, at *3 (S.D. Cal. June 20, 2017), to argue that the special relationship doctrine does not apply in this case. (ECF No. 16 at 5.) However, in *Fuentes*, the court examined the doctrine as it applies to law enforcement and the general public. *Fuentes*, 2017 WL 2670976, at *3 (finding the special relationship doctrine inapplicable after officers shot and killed the plaintiffs' family pet). Here, Plaintiff is anything but the general public. She is a custodian of the state who is vulnerable and dependent on Defendants for protection. *See Lum*, 756 F. Supp. 2d at, 1255 ([P]risoners and arrestees are equally vulnerable and dependent on officers and jailers for safety and security . . . ."); *Giraldo*, 168 Cal. App. 4th at 250. *Fuentes* is therefore inapplicable here.

### C. State Law Claims

Defendants move to dismiss Plaintiff's Fifth, Seventh, Eighth, and Ninth Causes of Action for failure to state a claim under Rule 12(b)(6). (ECF No. 8 at 20–23.)

#### i. *Fifth Cause of Action*

Defendants argue Plaintiff fails to state a claim for negligence since all conduct alleged was intentional. (ECF No. 8 at 20.) Plaintiff voluntarily dismisses her Fifth Cause of Action and has not requested leave to amend. (ECF No. 14 at 6.) Plaintiff's Fifth Cause of Action is therefore dismissed without leave to amend.

#### ii. *Seventh Cause of Action*

California Civil Code § 51.9(a) provides that a person is liable in a cause of action for sexual harassment when a plaintiff proves all of the following elements: (1) there is a business, service, or professional relationship between the plaintiff and defendant; (2) the defendant has made sexual advances, solicitations, requests, or demands, or engaged in other conduct of a sexual nature or hostile nature based on gender, that were unwelcome and pervasive or severe; and (3) the plaintiff has suffered or will suffer economic loss or disadvantage or personal injury, including, but not limited to, emotional distress or the violation of a statutory or constitutional

right. Cal. Civ. Code § 51.9(a). Defendants argue that Plaintiff fails to state a claim under § 51.9 because she has not established a qualifying relationship. (ECF No. 8 at 20–21.) Plaintiff responds that § 51.9 should apply to jailor-inmate relationships because "by their nature, county jails are charged with providing inmates services while the inmates are in their custody." (ECF No. 14 at 5.) Specifically, Plaintiff contends that the San Joaquin County Jail provides housing, recreation, religious, education, and healthcare services. (ECF No. 14 at 5.) Plaintiff further maintains that Swanson was providing the service of transporting Plaintiff to the hospital when the alleged incidents occurred. (ECF No. 14 at 6.)

"[T]he Legislature enacted Civil Code section 51.9 to address 'relationships between providers of professional services and their clients.'" *Hughes v. Pair*, 46 Cal. 4th 1035, 1044 (2009). Section 51.9 enumerates numerous qualifying relationships, including but not limited to physicians, psychotherapists, dentists, attorneys, accountants, real estate agents, executors, trustees, landlords, teachers, elected officials, lobbyists, directors, and producers. Cal. Civ. Code § 51.9. Section 51.9 also includes a catchall provision stating that it applies to any "relationship that is substantially similar to any of the above." *Id.*

Plaintiff provides no authority supporting her proposition that a jailor-inmate relationship is substantially similar to any of the professional relationships enumerated in § 51.9. Jailor-inmate relationships are inherently distinct from the professional, business, or service relationships contemplated by § 51.9 because such relationships occur outside of the professional business setting. Jailor-inmate relationships are not professional relationships involving a client voluntarily seeking a paid professional's health, legal, or other business services, but rather are custodial relationships in which an inmate is subjected to the relationship as a result of the inmate's involuntary incarceration. *See Solesbee v. Cty. of Inyo*, No. 1:13-CV-1548 AWI JLT, 2014 WL 3890680, at *9 (E.D. Cal. Aug. 7, 2014) (holding § 51.9 did not apply to a relationship between a participant in a county jail work release program and the county). Thus, even if Defendant technically provided Plaintiff housing, recreation, religious, education, healthcare, or transportation services, the services do not arise out of the kind of professional relationship contemplated by § 51.9. Accordingly, Plaintiff is not in a business, service, or professional

10

relationship with Defendants, and the Court dismisses Plaintiff's Seventh Cause of Action for sexual harassment. Because amendment of the claim would be futile, that dismissal is without leave to amend.

### iii. Eighth Cause of Action

Defendants argue Plaintiff fails to state a claim under California Civil Code § 52.4(e) because the statute is inapplicable to employers. (ECF No. 8 at 21–22.) Plaintiff voluntarily dismisses her Eighth Cause of Action and has not requested leave to amend. (ECF No. 14 at 6.) Plaintiff's Eighth Cause of Action is therefore dismissed without leave to amend.

### iv. Ninth Cause of Action against the County

Defendants argue that negligent hiring, supervision, and retention claims are not cognizable against public entities. (ECF No. 8 at 22–23.) Indeed, "California's Government Claims Act immunizes public entities from tort liability in all cases except those where liability is explicitly created by a particular statute." *Lindsay v. Fryson*, No. 2:10-CV-02842 LKK, 2012 WL 2683019, at *3 (E.D. Cal. July 6, 2012) (citing Cal. Gov't Code § 815(a)(7)). Defendants argue that Plaintiff has failed to point to any statutory basis for liability. (ECF No. 8 at 22–23.)

For her part, Plaintiff cites to *C.A. v. William S. Hart Union High School District* to argue that a plaintiff can in fact sue a public entity for negligent hiring, retention, and supervision. (ECF No. 14 at 3, citing *C.A. v. William S. Hart Union High School District*, 53 Cal. 4th 861 (2012).) In *C.A.*, the California Supreme Court, relying on Gov't Code § 815.2, determined that a student could bring suit against a public entity for negligently hiring, retaining, and supervising a school counselor who sexually harassed a student. *C.A.*, 53 Cal. 4th at 701–02. Cal. Gov't Code § 815.2 states that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." And Plaintiff in fact cites to § 815.2 in her Complaint to support the theory that the County may be held vicariously liable for Moore's negligent hiring, training, and/or supervision of Defendant Swanson if any such negligence is present here.

As Defendant points out (*see* ECF No. 8 at 22), the *C.A.* court limited its holding to

11

situations where there was a special relationship between the plaintiff and the supervisory or administrative personnel of the public entity. *See Fuentes*, 2017 WL 2670976, at *3 (discussing the limitation of *C.A.*). But Defendants' argument that the "special relationship" doctrine does not apply in this context is similarly misguided. (*See* ECF No. 16 at 5.) Plaintiff argues that Defendants have a "special relationship" with Plaintiff which required Defendants to "protect . . . Plaintiff who was detained in their jail facility from harm and to exercise care in selection, retention, training, and supervision of their employees." (ECF No. 14 at 3–4.) Essentially, Plaintiff argues the County is vicariously liable because a "special relationship" existed between Defendant Moore and Plaintiff (ECF No. 14 at 3), and the Court agrees. As explained above, the Court finds such a special relationship exists under the facts plead. Consequently, the County may be held vicariously liable.

Accordingly, Plaintiff has made a showing that the necessary statutory basis and special relationship exists sufficient to survive a motion to dismiss. Therefore, Defendants' motion to dismiss Plaintiff's Ninth Cause of Action against the County is denied.

### IV. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS in part and DENIES in part Defendants' Motion to Dismiss. (ECF No. 8.)

Specifically, the Court hereby:

1. DISMISSES Sheriff Moore in his official capacity with prejudice.
2. DISMISSES Plaintiff's First Cause of Action against the County and Moore in his individual capacity with leave to amend.
3. DISMISSES Plaintiff's Second Cause of Action against the County and Moore in his individual capacity with leave to amend.
4. DISMISSES Plaintiff's Fifth Cause of Action without leave to amend.
5. DISMISSES Plaintiff's Seventh Cause of Action without leave to amend.
6. DISMISSES Plaintiff's Eighth Cause of Action without leave to amend.

///

///

7. DENIES Defendants' Motion to Dismiss Plaintiff's Ninth Cause of Action against both Defendant Moore and the County.

IT IS SO ORDERED.

Dated: May 10, 2019

Troy L. Nunley
United States District Judge